And good morning, everybody. The first argued case this morning is number 16-2700, Jack Henry & Associates v. Plano Encryption Technologies. Mr. Heydrich. Thank you, Your Honor. My name is Jay Heydrich. I represent the appellants, all the appellants in this case. It's my first time arguing before the court. I've been here several times, but I appreciate the opportunity to be here today. Welcome. With me as well is Andrew Wimmer from Jack Henry In-House Counsel as well. Let me start with the Red Wing in the room. Absolutely. And you're arguing that we should overrule Red Wing Shoe. And I think you're conceding that we can't overrule it as a panel. If we follow our precedent in Red Wing, are you seeking an en banc? Well, if I could back up, overruling is one of our arguments. It's not our sole argument. I personally don't think you have to overrule Red Wing to get to where we believe the court should have gotten to in the district court. Yeah. Song, I take you there. Okay. Why should we accept your argument? You say Red Wing created a rigid bright line rule. But in reading it, I'm not so sure that we can't fit within Red Wing without overruling it. I agree with you, Your Honor. I think that the rigid bright line rule that's created is that it has created a perception that ‑‑ Well, there's a perception of a rigid bright line rule. Fair enough, Your Honor. You're not saying there is one, are you? Because that contradicts what you're saying. Exactly. Yes. And that's exactly where I was going to begin, Your Honor, is that we don't have to overrule Red Wing to fit in this. And where I think the difference is with Red Wing is that Red Wing says that if the letters that are sent out are demand letters, then we want to protect the intellectual property rights of patent owners to enforce them. Red Wing carefully says in this case. Isn't that true where they say there were two letters, I think? Yes. And then we hear there are many more. Exactly. And it was very difficult for me to see where you did get any sort of bright line when it says more than once on the facts of this case. Yes. And I think the bright line argument, Your Honor, and probably should have used a different set of words there. I apologize. But the bright line probably ‑‑ Where is the bright line? If there are two letters, that's the bright line? No, I don't think that the bright line exists, as I just discussed with Judge Wallach. I'm sorry. It's hard remembering those names. That's why we have the wall. I know. Your Honor, going to your question, the issue with Red Wing to fit under it is that these were business solicitations. These are business letters. They're not letters to merely inform someone of potential infringement. Why are they business letters as compared to the letters in Red Wing, which were also prepared by a non‑practicing entity? Two reasons, Your Honor. One, in that case, there were specific patents that were identified as potential infringement. There were specific products sent, and there were a limited number of letters sent. Here, Plano Encryption identified certain patents that they thought were infringed, but they also solicited a license to its entire portfolio for patents that were not even at issue. There's no allegation of infringement. And Plano Encryption's admitted sole business is to monetize its patent portfolio. And the other difference between Red Wing and AdvoCent is that Plano Encryption is a registered LLC in Texas. Can I ask you something? Do you think that in Red Wing, the patent owner there, that was not their business model? That was not their purpose of their business? I can't answer that, Your Honor. But one thing that is present here that also was not present in Red Wing is that that was looking at a jurisdictional issue from a company that had no other contacts with the state. And that's what Red Wing looked at is there's no other contacts other than the demand letters that were sent out. Here, Plano Encryption is a registered LLC in the state of Texas, the entire state of Texas. Yeah, it's a district argument. And your argument is that, in fact, they're just right over the line. Well, it's more than that. Our argument is that they're registered to do business in the entire state of Texas, including the Northern District. So if the Northern District were a separate state, it would still be registered to do business there, which is a contact that wasn't present in Red Wing or AdvoCent. Can you say something about their being much closer to the courthouse in your district than in the district? Their headquarters is much closer to the district in the Northern District of Texas than it is in Marshall, Texas, where they have initiated the lawsuits in the Eastern District of Texas. Yes, Your Honor. So to go back to the original question is you can fit under the precedent of Red Wing. These are business solicitations, and that's where it gets tricky with a non-practicing entity. We all think that the law is pretty settled, but if you do business as a general rule in a district, you're probably going to be subject to personal jurisdiction there. And so when a company's sole business is to monetize its patent portfolio, where do we draw the line then as to when it gets away from the policies set forth in Red Wing that we want to allow patent owners to inform others of petitioner rights? But that wasn't the only consideration. Was there in this district court duplicative litigation in adjacent districts and so on? Isn't there a degree of discretion for efficiency? Well, Your Honor, that is one thing that was mentioned.  I know it wasn't the focus. What's that? He certainly was aware that these were contiguous districts with identical litigation. Certainly, Your Honor. A district court has discretion to manage its docket how it sees fit. And if Judge Godbee had decided to dismiss the case based on the decision to manage its docket and for efficiencies, then he certainly would have clearly said so, and he didn't. Well, these don't have to be sole consideration issues. These are the combination of factors that came together. And to consider as a matter of discretion, again, efficiency overall are all of the factors. Yes, Your Honor, that is a consideration that can be made. But the cases were also on different case paths as well, where there was litigation pending in the Eastern District of Texas, but those cases were ahead, well ahead of the schedule that was in the Northern District of Texas. But presumably, the judges in the Eastern District of Texas would have some familiarity. They would know the patents and everything, yes, Your Honor. Candor over valor, absolutely, Your Honor. I agree. I concede that point. But getting back to the point of why we're here today as to whether or not Plano Encryption is subject to venue in the Northern District of Texas, they are conducting business in the Northern District of Texas. It's the only business they conduct. And if you were to take the license solicitation letters that were sent by Plano Encryption, where it says, we invite you to take a license to our patent portfolio, and substitute the words, our software suite, and it was a software company, and they sent the same letters. Let me just say, I want to take you back to your prior discussion. And that is, at the end, what Judge Godbee says is, because PET doesn't have sufficient context with the Northern District under 1391D, it's an improper venue, and accordingly, it grants motion under 12B-6, but then it adds a footnote saying, there was also a motion to dismiss under 12B-1, saying the court should exercise its discretion, but I'm not going to do that. I'm not going to reach the other arguments. So it looks like it's going red wing all the way. That was the import of his opinion, yes, Your Honor. And that goes back to the exact point of, if this was a software company that said, take a license to our software, we wouldn't be having this discussion. It would be very clear, I think, under the law, and that's what the 3D Systems case says, that if you send out license solicitations pamphlet, if you solicit business from residents of a district,  and when you have, and that's all we're asking for, is to allow the district court to make those determinations, that if there are one or two letters that are directly sent out that specifically identify, like was the case in Red Wing or Advocate, that said, we're informing you of our rights, and these are very specific, that's one scenario. When you have almost 30 letters that are blasted out over the entire state that are form letters that have the same typos in them by an entity that does nothing but monetize its patent, that's doing business. If that's not doing business, what business do they do? They're seeking to enforce their patent portfolio. Are the issues or the merits proceeding to litigation in the adjacent district? The adjacent district has all been resolved, Your Honor. There are no pending cases against the banks that were sued in the eastern district originally have all been resolved. I believe there may be some new litigation that's been filed by Plano Encryption, but as far as the banks that were in litigation at the time involved. Is that recent? I don't recall that in the briefs. I think that is recent, Your Honor, yes. This is the only district in which there's any litigation activity? I'm not aware of that, Your Honor. Mr. Pitcock would probably be able to speak to that as far as what entities he sued recently. As far as the cases that were pending at the time that this action was filed, those cases have all been resolved. There's one other point I'd like to make as to why these are business letters. In the adjacent litigation in the eastern district of Texas, when it filed the complaints against those entities, Plano Encryption cited to these letters as a basis as to why these entities had prior knowledge of these patents and therefore sought enhanced damages under 285. And so this goes to the entire business model of Plano Encryption of monetizing its patents, that these aren't letters just to inform people of their rights. They're creating evidence so they can use it in their business of suing companies. And that fits under Red Wing. It fits under Avacyn. If you find that these letters are business solicitations and in furtherance of Plano Encryption's business, that the only business it engages, then there's no need to overrule Red Wing or Avacyn or that line and give district courts the discretion to decide, is this a letter that deserves protection under Red Wing or is this furtherance of a non-practicing entity's business? Okay. Let's hear from the other side. Thank you, Your Honor. Mr. Pitkoff. Yes, Your Honor. May it please the Court. So just to go back on the facts for a second, there have been two rounds of litigation against ‑‑ there have actually been four litigations now, and all of the actions that were brought by PET were in the Eastern District of Texas, which is incidentally where Jack Henry has an office and doesn't have one in the Northern District of Texas. Let's get down to specifics. Sure. In a declaration at JA 543, Mr. Little ‑‑ Yes. Little or Liddell? It's Little, Your Honor. Mr. Little says he sent letters to various banks, but the record doesn't show the total number that received letters of the districts in which they reside. Is that somewhere in the record? I don't believe it is, Your Honor. Okay. There were ‑‑ No, no, no. Oh. Watch my lips. Sorry. When they're moving, don't talk. Okay? Given his lack of specificity, can we assume that the specific facts would be adverse to him? I don't believe so, Your Honor. I believe it would be the burden of the movement on a motion to dismiss to plead or protest. Really? Really? The burden is when a party fails to disclose facts, isn't there a presumption that those facts would be adverse to him? Isn't that the way the law works? Well, I don't think there was any finding that letters to any other party were relevant, so I don't know. Then why did he say it? I believe he was just being honest in his declaration that letters were sent out to various banks. I don't think the fact that there were other letters would have been ‑‑ Okay. Then let's get down. How many banks received letters from Plano Encryption? I don't recall off the top of my head, Your Honor. Really? Really. It's been through two rounds of litigation in the Eastern District of Texas. I don't care. Okay. Then you don't know how many of those banks were located in the Northern District? I do not, Your Honor. And you don't know how many were located in the Eastern District? I know at least four of them were located in the Eastern District of Texas. Out of? Approximately 30 letters. Oh, okay. So we do have something. Approximately 30. Okay. So is anything still pending in the Eastern District? There is a case that has settled, Your Honor, that has not officially been dismissed, but it is the only remaining case now pending in the Eastern District of Texas. There have been two prior litigations, both of which went to Markman and had substantial work done in them in the Eastern District of Texas. There was a D.J. that was filed in Delaware based on the corporate parentship that was dismissed by the judge there, and there was a case filed by a bank in the Western District of Texas. Sorry, Your Honor. Why was it dismissed in Delaware? Because there was no jurisdiction. You say there's a corporate parent or because it was the parent and not the subsidiary? That's right, Your Honor. The subsidiary is incorporated in Texas? That's correct, Your Honor. In New World v. Ford Global Tech, the auto parts case, we established three requirements that we assess for specific personal jurisdiction. One, whether the defendant purposely directed its activities at the residents of the forum. Two, whether the claim arises out of or relates to the defendant's activities within the forum. And three, whether assertion of personal jurisdiction is reasonable and fair. You argue that Plano encryption doesn't have sufficient minimal contacts in the Northern District, and that corresponds to the first two requirements. However, we recently held that these first two requirements are satisfied under these circumstances. Specifically in New World International, we said, we've acknowledged that the defendant purposely directs his activities at residents of the forum when the defendant sends an infringement letter to a potential plaintiff in that particular forum, and that a subsequent declaratory judgment action by that potential plaintiff arises out of or relates to the defendant's activity, namely the infringement letter. In light of our holding in New World, are you still saying those two requirements are not satisfied? Yes, Your Honor. I believe that that is incorrect. Just as he's arguing for Red Wing Shoe to be overturned, I do not concede that those first two elements. What distinguishes the proper analysis of the first two requirements from New World? Well, I believe that under Supreme Court precedent, in particular Burger King, that sending a letter is not purposeful availment of a... Listen to what I said. It'll help you. What distinguishes the proper analysis of those first two requirements from New World? Don't argue other cases. Tell me about what distinguishes it from the New World analysis. Nothing, Your Honor. I would concede that under the New World analysis and actually under several of the other precedents, the court has always found that the first two elements would be met by the mere sending of a letter into a form. So the case comes down to whether assertion of personal jurisdiction is reasonable and fair. Is that fair to say? I would say if you assume that those precedents are correct, then that would be true, Your Honor. Okay. So how do you fit Red Wing into all this? Well, I think Red Wing's shoe, along with a long line of other cases, Your Honor, held that it's not reasonable and fair to be hauled into court if you send a letter simply informing somebody of your federally protected patent rights. Do you agree, though, that when you're looking at whether something's reasonable and fair, there's a lot of other factors to consider and it's a case-by-case determination? Well, in that case, if it were fact-by-fact, and unlike Breckenridge, where it was specifically held that the number of letters and other things didn't factor into this analysis, then the specific facts of this case are of the defendants who sued, only three of the 14 were located in the Northern District of Texas. One of them was the corporate parent of the other. So there were really only two entities that got sent a letter. PET had no knowledge of the fact that Jack Henry had any relationship to any of these defendants at the time it sent the letter, and if it did, Jack Henry hasn't come in and shown why it's indemnifying or been involved in the case. Why did Jack Henry get such a letter, then? They did not receive a letter, Your Honor. They have never received a letter from PET. Oh, I hear right. And we argued that they don't have subject matter jurisdiction to be here, and we argued that in front of the district court as well, because they're here arguing on behalf of a bunch of banks, most of whom didn't receive a letter in the Northern District of Texas. Listen to me. Yes, Your Honor. It helps us if you direct your arguments to our questions. We have a lot of questions, okay? Yes, Your Honor. So let me keep you in Red Wing. Okay. Red Wing says, without more. Specifically in determining whether it's fair and reasonable, we have explained that without more infringement letters are not sufficient. Could the without more language encompass a business practice designed to deliberately manipulate jurisdiction and raise litigation costs for parties targeted by the letters? Well, I think you're right. I'm not asking you to concede facts. I'm just saying if that were the situation, would that be the without more? Well, but I think, Your Honor, in answer to your question, sending a notice letter trying to get somebody to resolve something without litigation does the opposite. I mean, all that will happen is if you change the rule and say if you send a letter, then people will sue and they'll sue first without giving any notice at all. If you won't answer my question, you're just going to lose my vote. I understand, Your Honor. So please answer my question. Sure. In a hypothetical world, if a company was sending letters designed to deliberately manipulate jurisdiction and raise litigation costs for parties targeted by the letter, would that fall within the more of without more? I want to answer your question. I don't see how sending a letter would do that. No, no, no, no. If you could manipulate jurisdiction. I'll modify my question for you. Sure, Your Honor. If in some way that were the circumstance, could we find jurisdiction based on infringement letters if it was in conjunction with other activities? I don't believe so, Your Honor. If those activities aren't directed towards the forum, if there's no purposeful availment of the Northern District of Texas as a forum, if there's no plus factor, no exclusive jurisdiction there, no meetings to try to settle the patents, I do not believe that you would have minimum contacts. The district court, in its opinion, said that the only connection between PET and the Northern District of Texas is a letter sent to a single bank inviting the bank to take a license in PET's patents. The record appears to show that PET sent letters to at least three banks in the Northern District. Am I correct? That would be correct, Your Honor. Well, two banks and one bank's parent. Yes, Your Honor. So three. Yes, Your Honor. Did the district court clearly err in saying that PET only sent a letter to a single bank? I believe that would be an error on the facts, Your Honor. Okay. Or would it have been a matter of timing? Because I would have thought that that would have been clearly stated before the district court. Could it have been that the other letters were sent later? Or can you explain that? What seems to be a clear mistake of fact? I can't explain it, Your Honor. I believe that it may have been a lack of knowledge on the part of somebody. It may have been a mistake as to the location. I mean, the districts are drawn not along sometimes easy-to-follow lines, so perhaps there was a mistake of fact in one of the sets of pleadings. I know we would not have, of course, and I'm sure opposing counsel would not have intentionally said anything that was factually incorrect to the court. Do you concede the appellant banks have standing? No, Your Honor. Actually, only three of the banks have any reason at all to be in the Northern District of Texas. The rest of them are not located, nor were any letters sent to the Northern District of Texas on behalf of those banks. But you asked about standing. Judge Wallach asked about standing. Yes, I understand. I don't believe they have standing. I don't believe that they should be part of the litigation because there's no reason for them to be suing my client in the Northern District of Texas. Oh, I'm sorry. I apologize, Your Honor. Yes, they would have proper D.J. standing under MedImmune. I apologize. Okay. I got lost in the facts. Thank you, Your Honor. Okay. Thank you. Yes. They have all been they were all accused of infringement at one point in history and would have standing under MedImmune. Okay. Let me follow up. Yes, sir. Considering that this case was decided under Rule 12, why isn't Jack Henry's allegation of indemnification in the complaint sufficient to establish its standing? We've never, and under Data Turn and other cases, they've never accepted just the mere pleading of indemnification. You usually are required to produce the agreement. They offered to produce the agreements. Did they not? They did not. And, in fact, we specifically requested them, and they have never produced those agreements. Was this an issue before the district court? Well, we never got into discovery, Your Honor, but we asked for the agreement that would have shown, you know, their supposed indemnification obligations to these banks, and they never produced it. We have never seen that. Do you have the record in front of you? I do not, Your Honor. I apologize. But it wasn't denied? Did anyone say no, there's no indemnification obligation? It was moved because it was rendered moot by the motion to dismiss on venue grounds, so we never got into subject matter jurisdiction. But Jack Henry has taken a position that they are the indemnitor. You're just saying that you haven't seen an agreement to that effect. Do I understand that correctly? Haven't seen an agreement, don't know what the terms are, and under data terms. I want to direct your attention to the appendix of 562. Okay. And I think your opposing counsel will provide that to you. Thank you. Look at footnote 2 on that page, please. Are you familiar with that? Yes, Your Honor. So they did offer to provide the documents, did they not? Well, the prelude is if the court wishes to see copies of the indemnity agreements, and the court, we wish to see copies of them, they never provided them to us. Did you ask for them? Yes. And mentioned it in our papers that they had never provided them, repeated them, which is why they dropped this footnote. They're just saying we'll give them to you if you order us to, but we've never seen them. I'll hear from your opposing counsel about that. That's right. Any more questions? Any more questions? Okay. Thank you. Okay. Mr. Heidrich. Thank you, Your Honor. If I can begin with the standing issue. It was not our position that the court had to order us to produce them. If the court felt like the standing issue was an issue, we were more than willing to produce them. Were you asked for them and refused to provide them? I don't recall ever being asked for them. In fact, we wanted to engage in discovery, Your Honor, and plain encryption filed a motion to stay all discovery that would have allowed for these, as well as discovery as to other contacts. Why didn't you just drop them in the mail? We didn't feel it was necessary. We didn't feel like it was necessary for the court, Your Honor, because under Rule 12, the court is required under the basis of the motion to accept the claim. I don't know, but when I practiced law, I used to just send everything to the other side, unless it was prelude. You did? You bet. Saves a ton of money. If I could, you asked another question, Your Honor, about where the letters are sent forth, about the number of banks that were sent letters on the record. That is in the appendix at 549 to 553. It outlines approximately 30 banks that received letters, and these are the ones that we know of that we're able to find. There may be more, as well as their connections to which district in the Northern District. And Mr. Pitcock referred that there's only three banks that received letters. That is true as far as three banks that are part of this appeal. There are an additional four banks that are part of the Northern District that aren't part of this appeal that also received letters. Are those identified? Are they identified in these pages at 549? Yes, yes, yes, they are. And there's also additional banks that aren't headquartered in the Northern District of Texas but have offices or customers in the Northern District. And when you go towards the first factor of directing your business activities towards the residents of the district, all of these letters should be considered when determining whether or not Plano Encryption has directed its business activities towards this district and going to the finality of the litigation, Your Honor, that you've asked about. If this were to proceed to a patent infringement action and they asserted counterclaims, they would be seeking damages for alleged infringement by customers in the Northern District of Texas. So when they send letters to banks that have customers, offices, or a base in the Northern District, they're directing their activities towards that district. Unless the Court has other questions. Do you have any more questions? No, but I want to add a practice note for anybody who actually litigates in this room, and that is I also used to answer interrogatories and requests for admissions with an objection where it was proper, but then I'd say, I think you're trying to get this information, and here it is. And if necessary, here's the documents to support it. It's a lot easier to practice law that way. Thank you, Your Honor. Was this when you were representing the United States or when you were representing? Both. Okay. Any more questions? No. Okay, thank you. Thank you both. The case has taken a decision.